UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

OBRIAN HAWKS
*by next fried D'Mica Rozetta,*

     Plaintiff,

v.                                      Case No. 2:26-cv-102-KCD-NPM

GEO GROUP, INC., JOHN DOE AND
JANE DOE, JOHN DOE OR JANE DOE,
JOHN DOE OR JANE DOE, JANE DOE,
JANE DOE, FLORIDA DEPARTMENT
OF CORRECTIONS, and MEDICAL
CONTRACTORS AND HOSPITAL
ENTITIES,

     Defendants.

---

## ORDER

On January 20, 2026, D'Mica Rozetta filed a 42 U.S.C. § 1983 civil rights complaint as the purported "next friend" of Plaintiff Obrian Hawks. Hawks is incarcerated at the Moore Haven Correctional Facility in Glades County, Florida. (Doc. 1.) Along with the complaint, Rozetta filed a motion for recognition of next friend status. (Doc. 2.) On February 4, 2026, she filed a motion for emergency injunctive medical relief asking the Court to order the defendants to provide Hawks with better medical care, "including urgent evaluation and treatment by a qualified oral and maxillofacial surgeon[.]" (Doc.

7 at 1.) The Court now denies Rozetta's "next friend" status and dismisses the complaint without prejudice for lack of standing.

## I.    Discussion

### A.    Rozetta does not have standing to bring this action.

Under Article III of the United States Constitution, a federal court cannot consider the merits of a legal claim unless the person seeking to invoke the jurisdiction of the court establishes the requisite standing to sue. *Whitmore v. Arkansas*, 495 U.S. 149, 154 (1990). A litigant demonstrates standing by showing that he or she has suffered an injury in fact that is fairly traceable to the challenged action and is redressable by a favorable judicial decision. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998). Rozetta has no standing on her own in this action.

However, "next friend" standing "has long been an accepted basis for jurisdiction in certain circumstances." *Whitmore*, 495 U.S. at 162. "Most frequently, 'next friends' appear in court on behalf of detained prisoners who are unable, usually because of mental incompetence or inaccessibility, to seek relief themselves." *Id.* But "'next friend' standing is by no means granted automatically to whomever seeks to pursue an action on behalf of another." *Id.* To qualify for "next friend" standing, they must "provide an adequate explanation—such as inaccessibility, mental incompetence, or other disability—why the real party in interest cannot appear on his own behalf to

2

prosecute the action," must be "truly dedicated to the best interests of the person on whose behalf he seeks to litigate," and "must have some significant relationship with the real party in interest." *Id.* at 163-64. "The burden is on the 'next friend' to clearly establish the propriety of his status and thereby justify the jurisdiction of the court." *Id.* at 164.

Rosetta asserts that Hawks was struck in the face by a baseball bat during a recreation activity at the prison on December 17, 2025 and suffered a fractured jaw, facial lacerations, bleeding, and dental trauma. (Doc. 1 at 2.) He was transported to a hospital on the same day and received surgery on December 19, 2025. (*Id.*) Hawks' jaw was immobilized to stabilize his fracture. (*Id.*) On December 20, 2025, Hawks developed a fever, elevated blood pressure, and severe pain. (*Id.*) The nurses at the hospital "repeatedly allowed IV fluids to run dry and failed to monitor Hawks' condition." (*Id.*) He was returned to Moore Haven on December 21, 2025, "despite clear signs of infection." (*Id.*)

At the prison, Hawks continued to suffer fever, difficulty swallowing, shortness of breath, and severe pain. (*Id.*) He was admitted to the facility's infirmary from December 26–29, 2025 where he received treatment in the form of IV antibiotics and steroids. (*Id.*) On January 15, 2026, Hawks was transported for a post-operative visit with the surgeon, but he (or Rozetta) was unhappy with the care provided because Hawks did not receive "post-operative instructions, a treatment plan, dietary guidance, or follow-up scheduling, and

3

no nutritional protocol was ordered or explained to him." (Doc. 7 at 1.) Hawks remains confined with his jaw immobilized. He experiences difficulty swallowing, inadequate nutrition, pain, and an elevated risk of infection and airway obstruction. (Doc. 7 at 2.)[1]

Rozetta is Hawks' sister, so the Court assumes that she is dedicated to his best interests. But other than stating that Hawks is a prisoner and has suffered a mandibular fracture, Rozetta does not provide an adequate explanation for why he cannot appear on his own behalf to prosecute this civil rights action and has not otherwise shown she is entitled to next friend status. Prisoners file dozens of *pro se* actions in the Fort Myers Division of the Middle District of Florida every year, and the fact of their incarceration does not entitle them to have a non-lawyer file pleadings on their behalf. And while it is clear that Hawks suffered a serious and painful injury, he is not incompetent and is presumably able to prosecute his own civil rights action. He admits that he has filed medical grievances with the prison, and it is clear that he has been able to communicate the details of his injury and treatment to Rozetta. Rozetta does not have standing to proceed as Hawks' "next friend," and the Court will dismiss the complaint and this action for lack of jurisdiction.

---

[1] Because Rozetta alleged that Hawks was receiving inadequate nutrition and expressed concern about the prison's provision of medical care, the Clerk of Court sent a copy of Rozetta's motion for temporary restraining order (Doc. 7) to the Warden at Moore Haven Institution to alert the facility of Rozetta's concerns.

To the extent Hawks wishes to file a *pro se* complaint, he should be aware that the facts, as alleged in Rozetta's complaint, do not state a claim on which relief may be granted.

### B.   Hendry Medical Center, Palm Beach Hospital, and their employees are not state actors.

To prevail on a § 1983 claim, the plaintiff must show that: (1) the defendants deprived him of a right secured by the Constitution or federal law; and (2) the deprivation occurred under color of state law. *Arrington v. Cobb Cty.*, 139 F.3d 865, 872 (11th cir. 1998). A person acts "under color of state law" for purposes of § 1983 when he acts with authority possessed by reason of his employment with the state. *West v. Atkins*, 487 U.S. 42, 49 (1988).

Rozetta names emergency room physicians, hospital charge nurses, Hendry Regional Medical Center, and Palm Beach Hospital as defendants. She does not allege facts suggesting that either hospital or its employees are state actors. A private doctor's and private hospital's treatment of a patient who happens to be a prisoner, without more, does not create liability under the Eighth Amendment. *See American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) ("[Section] 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful.").

Moreover, Rozetta does not allege facts suggesting that the hospitals or their employees deprived Hawks of a constitutional right. Rather, she suggests

that Hawks is being inadequately treated due to incompetence. But to the extent she attempts to state a claim against these defendants for negligence or medical malpractice, neither claim is actionable under § 1983. *See Estelle v. Gamble,* 429 U.S. 97, 106 (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

Accordingly, to the extent Hawks alleges a state-law claim for medical malpractice or negligence, it should be filed in state court.

### C.    Hawks has not stated a deliberate indifference claim.

The Eighth Amendment's Cruel and Unusual Punishments Clause prohibits government officials from exhibiting "deliberate indifference" to the serious medical needs of prisoners. *Wade v. McDade,* 106 F.4th 1251, 1255 (11th Cir. 2024); *Estelle,* 429 U.S. at 104–05. In 2024, the Eleventh Circuit clarified the standard for establishing liability on an Eighth Amendment deliberate-indifference claim. *Wade,* 106 F.4th at 1261–62. The plaintiff must first show that "he suffered a deprivation that was, objectively, sufficiently serious." *Id.* at 1262.[2] Next, the plaintiff must demonstrate that the defendant acted with "subjective recklessness as used in the criminal law." *Id.* This means that the plaintiff must establish "that the defendant was actually, subjectively

---

[2] Unless otherwise indicated, all internal quotation marks, citations, and alterations have been omitted in this and subsequent citations.

6

aware that his own conduct caused a substantial risk of serious harm to the plaintiff." *Id.*

Not every claim of inadequate medical treatment states a cognizable claim under the federal constitution. *Wade*, 106 F.4th at 1262. "Medical treatment violates the [E]ighth [A]mendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991). And "[w]here a prisoner has received . . . medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in tort law." *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985). In short, a prisoner cannot establish a constitutional violation simply because he "may have desired different modes of treatment" than that which was provided to him. *Id.* Such course of treatment claims, by definition, involve the "exercise of professional judgment" and are not actionable. *Estelle*, 429 U.S. at 104 n.10.

Even if the Court finds that Hawks' facial injuries are an objectively serious medical need, the vague and conclusory allegations in the complaint do not articulate how any defendant was deliberately indifferent to that need. The prison transported Hawks to the hospital on the same day he was injured, and he received surgery. He was also taken to the prison's infirmary and treated

for three days when he showed signs of infection. He was returned to the hospital for follow-up care. In other words, Hawks received medical treatment for his injury. While Rozetta wanted the hospitals, doctors, nurses, and prison to do more, disagreement with the course of treatment is a matter for medical judgment that does not give rise to an actionable claim of deliberate indifference. *Estelle*, 429 U.S. at 106-07.

## II.    Conclusion

Rozetta has no standing to bring this action on her brother's behalf, and the complaint must be dismissed for lack of jurisdiction. Moreover, the complaint does not state a constitutional claim. If Hawks believe that he can file a complaint that comports with this order and states a constitutional claim, he must file his complaint on a court-approved form in a new action, accompanied by either the statutory filing fee or an Application to Proceed In Forma Pauperis.

Accordingly, it is now **ORDERED**:

1.    D'Mica Rozetta's motion for next friend standing (Doc. 2) is **DENIED**, and this action is **DISMISSED without prejudice.**

2.    The **Clerk of Court** is directed to terminate any pending motions and close this case.

3.    The **Clerk** is also directed to send a copy of the Court's preprinted 42 U.S.C. § 1983 complaint form and an application to proceed in

forma pauperis to Obrian Hawks at Moore Haven Correctional Facility.

**ENTERED** in Fort Myers, Florida on February 6, 2026.

Kyle C. Dudek
United States District Judge

9